This is the first time I've walked in a building like this.   I'm not sure if this is the right way. I'm not sure if this is the right way. I'm not sure if this is the right way. This is the first time I've walked in a building like this. I'm not sure if this is the right way. I'm not sure if this is the right way. I'm not sure if this is the right way.  This is the first time I've walked in a building like this.  I'm not sure if this is the right way.  But it's a good question. But it has the right amount of details that allow it to be accurately and quickly folded in two steps into a complete key packet. And also there are diagonal slots. We do have a prior art and I brought a mock up of the Thompson patent we prepared. It's an airline ticket envelope. It's meant to contain, in two separate pockets, an airline ticket, which is represented by this little pattern here, and a baggage claim check. Except why isn't the patent office right? I didn't mean to misuse the name right, in saying that it would have been obvious, and the only distinction is the perforations which the skeleton reference provides. Well, there's a number of things. First of all, in the obvious misrejection, the patent office says that instead of a fold line here, we can substitute a perforated line, which I think is reasonable, especially since we use perforated lines for fold lines in the signature registration key packet. However, they make the next step that then we can just simply take off this coverage from the registration form key packet, and also remove the glassine sheet here that forms the center pocket. So this is what is left. What limitation of your claims is not met by the Thompson reference, plus skeleton? We say that it can be folded, well, we say that it can be completed in two or fewer steps. Thompson, as it was designed, needs five steps for completion. There's two adhesives that need to be applied, and there are three fold lines that need to be folded. So we have to fold here, we have to fold this tab up, and then this has to be folded over, as well as two pieces of glue. So it doesn't meet that limitation. With the glassine on, it's not a single sheet. And I submit that this kind of dismountment of the prior art is not allowed. What difference does the number of steps make if we're talking about a product thing, which has certain components, and aren't they all met? Well, we said two or fewer steps. The reason for that is this is designed to be manufactured at the time of use. But you're not claiming a process, a method. No. But we're claiming something with two fold lines, so they can be folded quickly and accurately. Nobody objected to that claim. But the fact that the prior art might have those two fold lines and additional structure doesn't mean that the prior art is not a proper reference, correct? Well, I have no requirements for modification of prior art for an obviousness rejection. You can't just dismember it and use something, say, take this cover that was meant to cover and protect these tickets and claim checks, and just call it something else. But your claim says comprising, so why isn't everything that's in your claim, and the prior art also shows some other stuff, but that doesn't matter. I mean, if your claim had been consisting of, then clearly it would make a difference. Well, in my understanding, comprising is open-ended in the sense that you can add additional steps. But it isn't so open-ended that you can change the scope of the claim, or somehow add to the scope of the claim. And actually broaden the existing elements. I don't think comprising is so open-ended, and there is case law that suggests that it's not. In fact, I have the site if you're interested. The site is Spectrum International Incorporated v. Starlight Corporation, 164 F. 3rd, 1372. This court says that comprising is not a lethal word with which to advocate claiming. Comprising is not sufficiently open-ended to alter the scope of the claim. Now, I have a few other comments, and then respond with three. There is no evidence in Thomson that Thomson can be printed on a laser printer. And so we've had kind of a discussion through all the briefs on this point. In Thomson, they don't even illustrate printing on the... Well, two of the other independent claims, I think claims 11 and 16, claim that this, that our registration form key packet needs to have characteristics such that it can be printed on a commercially available laser printer. And that intent is expressed throughout the application. But there's no evidence that this can be printed on a laser printer. It says commercially available computer printer. Oh. That's a laser printer. But in either case, those printers are designed to... You're right. Claim 16 is to a laser printer, but not claim 11. They're designed to print rectangular forms in general. This is decidedly not rectangular. There are not two parallel edges which I can feed it into. We also supplied evidence during prosecution that there are all kinds of critical considerations, size, shape, moisture content, thickness, all kinds of things that allow something to be commercially printed. Thomson doesn't address any of them. It makes no indication that this form is printable. It doesn't even provide dimensions for this, type of paper, or anything else. There's simply no evidence in Thomson that this is printable. Um... Crowl teaches printing, though, doesn't it? Isn't that the reference that the PTO uses to combine with Thomson? There's one line in the object part of the disclosure that says it can be printed. It's designed to be printed on a mechanical typewriter. But Crowl is substantially rectangular. This is not. And again, going back to this point, there's no suggestion in any of the references that any part of the paper products disclosed in those references should be separated and used independently for another part. There's just simply no teaching for that. And according to both the USPTO regulations and the MPDP, as well as in case law, you have to have a suggestion for modifying the reference. You're not arguing that Thomson is non-analogous prior art. That's not positive, are you? No, I'm saying that this is an improper modification of the decided art. It destroys its purpose, and there is no suggestion for this fairly radical modification, essentially a dismemberment of the prior art. We also have extensive discussion in the field with regard to the objective evidence. I just wanted to point out that it really isn't our contention that the objective evidence that we submitted is dispositive or a knockout blow. But what our contention is is that it was not properly considered during the prosecution. And there is case law that suggests that it doesn't have to be a knockout and it should be properly considered along with all the other evidence during the prosecution, but it was not. As late as the examiner's reply brief, the examiner stated that we didn't include price information in the evidence, and we did, and stated that our evidence showed commercial usability rather than commercial success without insight or explanation or any kind of framework or teaching that could allow me to effectively argue with the secondary evidence or even know what to submit. And the examiner's reasoning has changed with each of the eight office actions all the way up through the examiner's reply brief. So I'm really at a loss. I have no idea what it is that I need to submit in order to satisfy these continually changing requirements. And I consider that to be basically administrative over-assurance. Shall we save the rest of your time? Yes. I should point out also, I actually did write this application. We review decisions rather than criticize even opinions, much less patents. Mr. Wood. Thank you, Your Honor. May it please the Court, I'm Ben Wood with the Patent Office. Let me start off by saying that the claim covering Mr. Wright's commercial embodiment has been deemed allowable. Mr. Wright has patent protection for his commercial embodiment. That's claim 6, draft claim 6 in the application. He also has patent protection for the method of use of the product. And that's patent 6901370. What is at issue today in this appeal is whether the appeal claims, which are broader than his commercial embodiment, broader than the allowed claim. Where is the added breadth? The added breadth, Your Honor, is the failure of the appealed claims to limit the structure to a particular orientation of perforations. Vertical line of perforations? Yes, a vertical line of perforations combined with two horizontal lines of perforations, one above the other. But you know, Thompson has a different purpose, doesn't it? It's a ticket folder. This is a registration form, a key packet. That's why I raised the question of non-analogous art. As Mr. Bergstrom said, they are not arguing, or they did not argue in their blue brief, their opening brief, that Thompson is not analogous and apparently is not art of doing it here. Thompson does indicate that it's broader than that particular use. It can be used for an assortment of items, not just an airline ticket and whether or not the exact same purpose is set out in Thompson is not necessarily relevant. Mr. Wright cannot get a patent on old or obvious structure merely by claiming a new use for that structure. The patent office position is that this is a hotel registration function that is in the actual claims on appeal. In that sense, this case is similar to In Re Schreiber where the prior art that was deemed to be, to render the claims, or at least two of the appeal claims in that case, obvious was an oil can top, whereas the claim itself was a top for a popcorn container. So obviously the prior art did not claim, or did not disclose rather the claimed use, but the structure was capable of performing that use. Are you saying that claim one, if the word registration and key were deleted, would almost be a 102? Distinguished as it is only by the use, the use for a key and the use for registration? I threw you a curve ball. I think the PTO's position is that Thompson discloses a registration form. Really? It's a ticket packet. And it doesn't enclose the key. Well I think the best way to answer that question is refer your honor to page well actually it's the facing page four of the red brief where we have a picture of an embodiment of Mr. Wright's invention. It's a piece of paper and the application refers to just this portion 206 as the registration. So what properly interpreted, what registration form means is a portion of a single piece of paper that can be separated. And that's exactly what we have in Thompson in panel 18, a portion of, let me be more specific, that's what we have in Thompson, the unitary blank 12, which we can see on the facing page six. What about the two or fewer steps? Mr. Bergstrom says, what, Tri-Rot uses five steps? Did I get that correctly? Let's look at that. First of all the board relied only on the unitary blank 12, not on the glassine material 48. So the application or the gluing of that glassine material onto the unitary blank is not relevant to the board's conclusion that this ticket envelope can be folded in two or fewer steps. And in fact if you look at Thompson, But that's a limitation of the claim, which you have held would have been obvious. The limitation is that the claim is drawn to structure and the limitation is, properly interpreted, is whether that structure is capable of being folded into a pocket in two or fewer steps. The board correctly said it was, relying on Thompson page 18, A18 rather, of the joint appendix, where it is disclosed that a pocket is formed by two folds. The first fold is of panel 16 along score line 30. The second fold is of the flat 20 onto panel 16. So that is the substantial evidence that supports the board's finding that this structure can be folded into a pocket in two or fewer steps. Let me just give you the pinpoint site, Your Honor. That's page A18, column 2, lines 49 through 59. That is what the board cited. Let's see. If I can address a few comments from Mr. Bergstrom. Mr. Bergstrom indicated that the glassine material is needed to form the pocket. That's not true. Again, if you look at Thompson figure 2, which is on the facing page 6 of the red brief, you will see that the pocket is formed, and also, as I indicated, the site I just talked about in column 2 on page A18, the pocket is formed only by flat, correction, panel 16 being folded over and then flat 20 being folded onto that. The slot into which the pocket, into which items are inserted into the pocket is in panel 16. It's not in the glassine material. If you will see, again, figure 2, you will see that the glassine material is sealed at the top. You can't put anything into, you can't insert anything through the glassine sheet. And you can also see that the glassine material is open at the bottom. It doesn't hold anything. The pocket is flat 20 and panel 16 only. A critical element, Your Honor? Well, I believe you at one point referred to it as criticality or something like that in the brief. Where that comes up, Your Honor, is in this court's existing precedent regarding a shape limitation, where a shape, and this is how the board did it, modifying prior art in terms of shape alone does not render that claim patentable unless it can be shown that that shape limitation is significant or critical. So critical, in that sense, I think it's safe to say means significant. It means significant to the functionality of the claim device. And the court has set that rule out in cases such as in Ray Daly, in Ray Elbert. Daly never says anything about critical. I've read Daly. And in Elbert, which I have in front of me, it does say, it said, Appellant presented no evidence or argument which convinces us that the art employed by them to connect the branches of the orifice is significant or critical or is anything else more than a number, numerous curves a person of ordinary skill in the art would find obvious. I have to say that I was a little concerned when I read the board's opinion and your brief that there was a suggestion that there was a criticality component of obviousness law that set out some sort of separate test distinct from what we consider to be the four part obviousness test and have been applying for years. And certainly years ago there was this gist or heart of the invention focus. And my concern initially was that this criticality element was being resurrected as something different than the normal obviousness test. And when I refer back to Daly and Elbert, even those cases didn't to me suggest a separate test the way the board sort of promoted it in this case, but rather that just obviousness to one of ordinary skill in the art, certainly just changing the shape of something unless it actually does do something wouldn't be anything more than obvious in most cases. And would you agree with that as a statement of the law as opposed to a separate criticality component that needs to be met? Yes, Your Honor. And I would apologize for trying, for misstating that or the red brief doesn't make that clear, but that's exactly the rule that we certainly intended to set out. There's no criticality requirement, but unless the shape distinction has some functional significance, then normally it would be off. Well, that's what I thought you were doing. I just wanted to make sure. Anything further, Mr. Wood? Let me state that in response, Your Honor, to Mr. Bergstrom's comment that we are sort of exploiting the comprising transitional term to change the scope of the invention. That's not true. It does open itself to, using the word transitional term comprising opens up the claim to additional elements. Here the board relies solely on the unitary blank 12 without this glassine material. But even if you look at the entire disclosure, the unitary blank and the glassine material, that additional piece of glassine material is an additional element that the claim permits. Just quickly with regard to secondary considerations, let me just mention with respect to the printability elements of appeal claims 11 and 16. There is substantial evidence to support the board's conclusion that Thompson is printable. Thompson is not limited to size. This mock-up that Mr. Bergstrom is using is a bit exaggerated size-wise. Certainly Thompson can be much smaller than that and normally likely wouldn't be. It can be within an envelope of 8.5 by 11. Can it be printed by a laser printer? Yes, Your Honor, there is substantial evidence for that fact. It's made of paper, laser printer's paper. In terms of what is a laser printer, when this patent was or application was filed, I don't think it's safe to say that there was a large variety of commercially available laser printers on the market, which is what the claim is a printer that sits on a desk or is used for home or small office use, but can also include all sorts of large commercial sized printers that have varying degrees of functionality. So the claim itself is very broad. Thompson isn't limited to a particular size or dimension or moisture content. Secondary considerations, Your Honor, the declaration submitted by Mr. Wright has no information about the appropriate market share. Raw numbers themselves are insufficient to support a final commercial success without some idea of what market share the applicant enjoys. And that's all I have, Your Honor, unless there are other questions or concerns that I can address at this time. Thank you, Mr. Wood. Mr. Bergstrom has a little time left for rebuttal. Well, first, I'd like to say that Thompson does explicitly state the glass is part of this pocket. It's on the inside of the front cover. The baggage claim is inserted into this hole. This tab folds over to create an enclosed pocket, and it's a stated goal of Thompson that there are two separate pockets in this ticket envelope. So it's not true that the glassing is irrelevant. It constitutes that second pocket, and it states that in Thompson. It states that beginning on line 33 of column 2 in that paragraph. Again, I don't think one can disregard the closer plot. Thompson goes through, at the end of the disclosure, beginning on, I believe, line 49 of column 2, Thompson goes through and exactly states the steps required to make this ticket envelope. He mentions that the glassing has to be attached first. Then this rear panel has to be folded to the front panel on this fold line. The tab has to be bent up, and the cover has to be folded along fold line 4. It's just explicit in Thompson. So it does not meet the claim limitations. We have additional claim limitations. In claim 1, we decided to rectangular single-sheet registration form and keypad, but Thompson is not rectangular. The blank is decidedly not rectangular. As far as the comprising language, again, in the respondent's brief, they suggest adding the words at least the preamble of claim 1 so that we could have a multi-sheet keypad, but we said single-sheet, and we explicitly said that, and that is a limitation of the claim, and it was an intentional limitation. I do not think comprising allows you to add terms to the claim to broaden it. And they also suggest that two or fewer steps, they should add folding steps to that line, so that we're talking about folding steps rather than steps. Again, I do not think comprising allows you to change the scope of the existing claim elements. With regard to shape, opposing counsel said that the appeal board in this criticality test mentioned critical or significant. It did not. It only said critical. I believe that the appeal board did provide a criticality test in error. There is no case law saying that the teacher has to be critical in order to claim. There is one other point of dispute, and that is this elongated opening. As I pointed out in the appeal brief, Thompson never states that this holds a ticket. He explicitly states that this is an opening or inlet to the second pocket. If it's an opening or inlet, you can't hold the ticket, otherwise you couldn't get the ticket into the pocket. There is absolutely no suggestion, Thompson, that this is a slot for holding a ticket. Our claim limitation says that it is a slot that holds a key. This does not intend to hold anything. The record is inconsistent, and it is inconsistent due to a bit of a mistake on my part in the original appeal brief. I had kind of a wishy-washy statement saying that perhaps Thompson might stand for that. In the true analysis of it in our second response, that slot is not intended to hold anything.